Appeal No. 2014-1456

# United States Court of Appeals

*for the*

# Federal Circuit

GILEAD SCIENCES, INC.,

*Plaintiff-Appellee,*

— v. —

SIGMAPHARM LABORATORIES, LLC,

*Defendant-Appellant.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY, NO. 2:10-CV-004931-SDW-MCA,
JUDGE SUSAN D. WIGENTON

## NON-CONFIDENTIAL BRIEF OF PLAINTIFF-APPELLEE GILEAD SCIENCES, INC.

NICHOLAS M. CANNELLA
TIMOTHY J. KELLY
CHRISTOPHER E. LOH
FITZPATRICK, CELLA, HARPER
    & SCINTO
1290 Avenue of the Americas
New York, New York 10104
(212) 218-2100

*Attorneys for Plaintiff-Appellee
    Gilead Sciences, Inc.*

August 21, 2014

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, the undersigned counsel for

Plaintiff-Appellee Gilead Sciences, Inc. hereby certifies that:

1.    The full name of every party represented by me is Gilead

Sciences, Inc.

2.    The name of the real party in interest (if the party named in the

caption is not the real party in interest) represented by me is

Gilead Sciences, Inc.

3.    No publicly held company owns 10 percent or more of the

stock of Gilead Sciences, Inc.

4.    All law firms, and the partners or associates, that appeared for

the party or amicus now represented by me in the trial court or

agency or are expected to appear in this court are Timothy J.

Kelly, Christopher E. Loh, Shannon K. Stevens, Nicholas M.

Cannella of Fitzpatrick, Cella, Harper & Scinto, and William

O'Shaughnessy and Carissa L. Rodrigue of McCarter &

English. Colleen Tracy and Lori Wolfe, formerly of

Fitzpatrick, Cella, Harper & Scinto, also appeared, at the trial

court, on behalf of the party now represented by me.

i

Dated: August 21, 2014          By: _____

TIMOTHY J. KELLY
FITZPATRICK, CELLA, HARPER &
SCINTO
1290 Avenue of the Americas
New York, New York 10104
(212) 218-2100

*Attorney for Plaintiff-Appellee*
*Gilead Sciences, Inc.*

ii

*CONFIDENTIAL MATERIAL REDACTED*

## **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST ........................................................................ i

TABLE OF CONTENTS.................................................................................. iii

TABLE OF AUTHORITIES ........................................................................... v

STATEMENT OF RELATED CASES............................................................ ix

COUNTER-STATEMENT OF THE ISSUES ....................................................1

COUNTER-STATEMENT OF THE CASE .......................................................2

COUNTER-STATEMENT OF THE FACTS .....................................................4

SUMMARY OF THE ARGUMENT................................................................10

STANDARD OF REVIEW ...............................................................................13

ARGUMENT ....................................................................................................13

I.     This Court Should Affirm The District Court's Denial Of
       Attorneys' Fees.......................................................................................13

       A.     The Court Has The Power To Affirm The District
              Court's Denial Of Attorneys' Fees Without The
              Need For Remand ..........................................................................14

       B.     This Court Should Affirm Because This Case Is
              Not Exceptional Under The *Octane Fitness*
              Standard..........................................................................................15

II.    The '340 Patent Is Not Invalid Due To Any On-Sale Bar ...........................21

       A.     The District Court Did Not Err In  Finding That
                                      Redacted                     Were For
              Experimental Use............................................................................21

B.  The District Court Did Not Err In Not Finding
    That              Redacted
    Were Reduced To Practice...............................................................28

C.  The Lack Of A Supplier Or Secret Sale  Exception
    To The On-Sale Bar Is Irrelevant......................................................30

D.  There Is No Evidence Of Inequitable Conduct..................................31

III.  Gilead Did Not Litigate Its Validity, Enforceability, And
    Infringement Positions In An Unreasonable Manner...................................34

CONCLUSION ........................................................................................38

**Confidential Material Omitted**

The material omitted in this brief describes either the circumstances of
alleged sales or proprietary information submitted to the FDA in connection
with the review of Sigmapharm's Abbreviated New Drug Application.

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Abbott Labs. v. Geneva Pharms. Inc.*,
    182 F.3d 1315 (Fed. Cir. 1999)....................................................... 24

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
    299 F.3d 1336 (Fed. Cir. 2002)....................................................... 28

*Bayer Schering Pharma AG v. Barr Labs., Inc.*,
    Case No. 05-2308, 2008 WL 628592
    (D.N.J. Mar. 3, 2008)...........................................................23, 29, 30

*Bianco v. Globus Med., Inc.*,
    Case No. 12-147, 2014 WL 1904228
    (E.D. Tex. May 12, 2014) ..........................................................18, 19

*Brasseler USA I, L.P. v. Stryker Sales Corp.*,
    182 F.3d 888 (Fed. Cir. 1999)........................................................ 31

*Brasseler USA I, L.P v. Stryker Sales Corp.*,
    93 F. Supp. 2d 1255 (S.D. Ga. 1999) ............................................. 31

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
    393 F.3d. 1378 (Fed. Cir. 2005)..................................................... 14

*Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*,
    910 F.2d 804 (Fed. Cir. 1990)........................................................ 14

*CreAgri, Inc. v. Pinnaclife, Inc.*,
    Case No. 11-6635, 2014 WL 2508386
    (N.D. Cal. June 3, 2014) ................................................................ 19

*Dey, L.P. v. Sunovion Pharms., Inc.*,
    715 F.3d 1351 (Fed. Cir. 2013)...................................................... 24

*Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*,
    471 F.3d 1369 (Fed. Cir. 2006)................................................23, 27

*EON Corp. IP Holdings, LLC v. Cisco Sys., Inc.*,
   Case No. 12-01011, 2014 WL 3726170
   (N.D. Cal. July 25, 2014) ........................................................ 20

*EON Corp. IP Holdings, LLC v. FLO TV Inc.*,
   Case No. 10-812, 2014 WL 2196418
   (D. Del. May 27, 2014) ............................................................ 19

*EZ Dock, Inc. v. Schafer Sys., Inc.*,
   276 F.3d 1347 (Fed. Cir. 2002) ............................................... 22

*Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.*,
   655 F.3d 1291 (Fed. Cir. 2011) ............................................... 27

*Gould Inc. v. United States*,
   579 F.2d 571 (Ct. Cl. 1978) ..................................................... 23

*Hamilton Beach Brands, Inc. v. Sunbeam Prods., Inc.*,
   726 F.3d 1370 (Fed. Cir. 2013) .......................................... 24, 25

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   ___U.S. ___, 134 S. Ct. 1744 (2014) ...................................... 13

*Highway Equip. Co. v. FECO, Ltd.*,
   469 F.3d 1027 (Fed. Cir. 2006) ............................................... 33

*In re Ceccarelli*,
   401 Fed. App'x 553 (Fed. Cir. 2010) ....................................... 22

*In re Omeprazole Patent Ltig.*,
   536 F.3d 1361 (Fed. Cir. 2008) .......................................... 29, 30

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
   382 F.3d 1354 (Fed. Cir. 2004) ............................................... 33

*Manville Sales Corp. v. Paramount Sys., Inc.*,
   917 F.2d 544 (Fed. Cir. 1990) ................................................. 23

*McNeil-PPC, Inc. v. L. Perrigo Co.*,
   337 F.3d 1362 (Fed. Cir. 2003) ............................................... 33

*Microsoft Corp. v. i4i Ltd.*,
    ___U.S.___, 131 S. Ct. 2238 (2011) ................................................ 16

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    ___ U.S. ___, 134 S. Ct. 1749 (2014) .......................................passim

*In re Papesch*,
    315 F.2d 381 (C.C.P.A. 1963) .......................................................... 27

*Pennwalt Corp. v. Akznona Inc.*,
    740 F.2d 1573 (Fed. Cir. 1984) ....................................................24, 25

*Pfaff v. Wells Elecs., Inc.*,
    525 U.S. 55 (1998) .......................................................................22, 23

*Premium Balloon Accessories, Inc. v. Creative Balloons Mfg., Inc.*,
    ___ Fed. App'x ___, Case Nos. 13-3587, 13-4049, 13-4130,
    2014 WL 3891299 (6th Cir. Aug. 7, 2014) ...............................14, 15

*SFA Sys., LLC v. 1-800-Flowers.com, Inc.*,
    Case Nos. 09-340, 11-399, Slip Op. (E.D. Tex. July 8, 2014) .......... 20

*SmithKline Beecham Corp. v. Apotex Corp.*,
    365 F.3d 1306 (Fed. Cir. 2004) ...........................................24, 26, 27

*SmithKline Beecham Corp. v. Apotex Corp.*,
    403 F.3d 1328 (Fed. Cir. 2005) ...................................................... 27

*SmithKline Beecham Corp. v. Apotex Corp.,*,
    286 F. Supp. 2d 925 (N.D. Ill. 2001) ............................................... 23

*Stragent, LLC v. Intel Corp.*,
    Case No. 11-421, Slip Op. (E.D. Tex. Aug. 6, 2014) .................19, 34

*Therasense, Inc. v. Becton, Dickinson and Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) ...........................................16, 32, 33

*Tone Bros., Inc. v. Sysco Corp.*,
    28 F.3d 1192 (Fed. Cir.1994) ......................................................... 22

## Statutes

21 U.S.C. § 355(j)(2)(B)(ii) ........................................................... 4

21 U.S.C. § 355(j)(5)(B)(iii) ........................................................ 13

35 U.S.C. § 102(b) ..............................................................passim

35 U.S.C. § 271(g) ...............................................................6, 36

35 U.S.C. § 282 ...................................................................... 16

35 U.S.C. § 285 ..............................................................passim

## Regulations

37 C.F.R. 1.56........................................................................ 32

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rules 28(a)(4) and 47.5, the undersigned

counsel for Plaintiff-Appellee Gilead Sciences, Inc. states that he knows of

no case pending in this or any other court that will directly affect, or be

directly affected by, the decision in this pending appeal.


Dated: August 21, 2014          By: _____

TIMOTHY J. KELLY
FITZPATRICK, CELLA, HARPER &
SCINTO
1290 Avenue of the Americas
New York, New York 10104
(212) 218-2100

*Attorney for Plaintiff-Appellee
Gilead Sciences, Inc.*

CASE PARTICIPANTS ONLY    CONFIDENTIAL MATERIAL REDACTED

## COUNTER-STATEMENT OF THE ISSUES

Whether the District Court erred in denying Sigmapharm's motion for attorneys' fees where Sigmapharm failed to establish that this case stands out from others either because:  (i) Gilead's litigation position with respect to U.S. Patent No. 6,451,340 (the "'340 Patent") was anything other than a strong one because the                Redacted

related to use in clinical trials and thus were experimental uses that negated the application of any on-sale bar; or (ii) Gilead initiated or maintained the litigation in an unreasonable manner.

## COUNTER-STATEMENT OF THE CASE

This is an appeal from the District Court's denial of attorneys' fees in a litigation initiated by Plaintiff-Appellee Gilead Sciences, Inc. relating to an abbreviated new drug application ("ANDA") filed by Defendant-Appellant Sigmapharm Laboratories, Inc.  The District Court, having already dismissed the case – including Sigmapharm's counterclaims for invalidity and unenforceability based on     Redacted     *with prejudice* – denied Sigmapharm's motion for attorneys' fees on the ground that the case was not "exceptional" as required under 35 U.S.C. § 285.

The District Court, in its discretion, concluded that Sigmapharm had "failed to establish *any* misconduct on the part of Gilead during the litigation or in the procurement of its patents . . . ."  (A13 (emphasis added).)  Put simply, Gilead's claims with regard to the '340 Patent were not exceptionally meritless, and Gilead did not pursue (or maintain) the litigation in bad faith.  The District Court's denial of attorneys' fees is not in error under *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, ___ U.S. ___, 134 S. Ct. 1749 (2014) because this case is not one that stands out with respect to Gilead's litigation position or the manner in which Gilead litigated.  The modification of the exceptional case standard by the Supreme Court's *Octane Fitness* decision is not a basis for finding reversible error in

light of the factual findings in the District Court's decision. At most, the modification of the exceptional case standard represents harmless error in this case.

## COUNTER-STATEMENT OF THE FACTS

In June 2010, Sigmapharm filed ANDA No. 202051 seeking the approval of the United States Food and Drug Administration to manufacture and sell a generic version ("ANDA product") of the pharmaceutical compound adefovir dipivoxil or "AD." AD is protected by two "Orange Book"-listed United States patents assigned or licensed to Gilead, namely the '340 Patent, and U.S. Patent No. 5,663,159 (the "'159 Patent"). The '159 Patent claims AD and expires on September 2, 2014; the '340 Patent claims various crystalline forms of AD, methods for making crystalline AD, and a method for using crystalline AD as an antiviral treatment in humans (A37-91) and expires on July 23, 2018. AD is used to treat chronic Hepatitis B ("HBV") and is sold by Gilead under the brand name Hepsera®.

On August 17, 2010, Sigmapharm sent a Notice Letter pursuant to 21 U.S.C. § 355(j)(2)(B)(ii) informing Gilead of its ANDA filing, alleging that Sigmapharm's ANDA product would not infringe the '159 Patent or the '340 Patent, and alleging that the '159 Patent was invalid. On September 24, 2010, Gilead sued Sigmapharm for infringement of the '159 and '340 Patents, and the parties litigated the matter through December 2012. Sigmapharm's August 17, 2010 Notice Letter did not allege that the '340 Patent was invalid; instead, Sigmapharm's allegation of invalidity with

CASE PARTICIPANTS ONLY
CONFIDENTIAL MATERIAL REDACTED

respect to the '340 Patent was not made until after the August 2012 close of

fact discovery (A25), more than two years after its ANDA submission.

As the litigation progressed, Sigmapharm stipulated to infringement

of certain asserted claims of the '159 Patent (*i.e.*, the patent covering, *inter*

*alia*, the compound AD), thereby confirming Gilead's litigation position that

Sigmapharm's proposed AD product would infringe that patent, and

ensuring that Sigmapharm would not be in a position to market its product

until the '159 Patent expired on September 2, 2014, or until the '159 Patent

was invalidated.                                       Redacted

CONFIDENTIAL MATERIAL REDACTED

Redacted

Gilead
on December 11, 2012 filed an Amended Complaint which, *inter alia*,
alleged infringement of the '340 Patent under 35 U.S.C. § 271(g). [1]  (A522.)
Sigmapharm on December 13, 2012 filed an Amended Answer, Affirmative
and Separate Defenses and Counterclaims seeking declarations of
noninfringement and invalidity of the '159 Patent and declarations of
noninfringement, invalidity, and unenforceability of the '340 Patent.
Sigmapharm's Amended Answer                Redacted

---

[1]                Redacted

Redacted                    Sigmapharm's Amended Answer also added

an allegation that Gilead had engaged in inequitable conduct in the

procurement of the '340 Patent.  On December 20, 2012, Gilead promptly

moved to dismiss that allegation.[2]

During litigation, the market for HBV therapies was changing.

Although at the time of its introduction Gilead's Hepsera® was one of the

key HBV drugs available both in terms of safety and efficacy, later products,

such as Gilead's Viread® and Bristol Myers-Squibb's Baraclude®, offered

patients better options.  By early 2013, other generic HBV treatments were

on the verge of entering the marketplace, including a generic version of

Bristol Myers-Squibb's Baraclude®.

In view of those changing market dynamics – and for absolutely

nothing to do with Sigmapharm's inequitable conduct claim against the '340

Patent – Gilead, in March 2013, determined that devoting further resources

to its Hepsera® brand was no longer a business priority, and it provided

---

[2] Sigmapharm seeks to create the impression that Gilead unsuccessfully
moved on December 20, 2012 to have Sigmapharm's stand-alone '340
Patent invalidity counterclaim dismissed.  (Sigmapharm Brief ("SB") 5.)
That is wrong.  Gilead's December 20, 2012 motion did not seek dismissal
of Sigmapharm's stand-alone invalidity counterclaim; rather, it sought
dismissal of Sigmapharm's inequitable conduct counterclaim.  (*See* A1833-
53.)  Moreover, Gilead did not lose the motion.  The motion was denied
without prejudice with leave to refile as a motion *in limine*.  (A31.)

Sigmapharm with an unconditional and irrevocable covenant not to sue for infringement of both the '159 and '340 Patents. As a result, Sigmapharm was free to move forward with its ANDA product, and it launched that product when it finally received approval from the FDA in August 2013, more than one year prior to the earliest expiration date of the '159 and '340 Patents. To Gilead's knowledge, Sigmapharm's generic AD product is currently available on the United States market.

Upon issuing the covenant not to sue, Gilead moved to dismiss the litigation. The District Court granted Gilead's motion, dismissing all claims and counterclaims with prejudice, including Sigmapharm's counterclaims for invalidity and inequitable conduct with respect to the '340 Patent.[3] (A895-96.) The District Court thus never decided Sigmapharm's invalidity or inequitable conduct counterclaims. Sigmapharm nevertheless moved for attorneys' fees on the basis that the case was "exceptional" and that, as the (technically) prevailing party, it was entitled to fees under § 285.

Sigmapharm's claim for attorneys' fees is based solely upon its erroneous theory that                    Redacted

---

[3] The District Court's decision provided Sigmapharm with leave to move for attorneys' fees under § 285. (A896.) Sigmapharm did not appeal the District Court's decision to dismiss its counterclaims with prejudice.

CASE PARTICIPANTS ONLY

CONFIDENTIAL MATERIAL REDACTED

Redacted

Further, although Sigmapharm does not in its attorneys' fees motion or in this appeal allege that Gilead's actions in securing the '340 Patent amount to inequitable conduct, it nevertheless tries to substantiate its "exceptional" case claim by arguing that                Redacted

Indeed, the District Court concluded that Sigmapharm's support for its position that the '340 Patent was inequitably obtained                Redacted

---
[4]                Redacted

Redacted                                         was "insufficient to

demonstrate that Gilead had a specific intent to deceive the PTO."  (A12.)

## SUMMARY OF THE ARGUMENT

This case is not "exceptional," and the District Court did not err in so

finding.  It was well within the District Court's discretion to conclude, on the

record, that Sigmapharm did not establish by clear and convincing evidence

that the '340 Patent is invalid or unenforceable, or that Gilead acted in an

unreasonable manner (let alone with subjective bad faith) in pursuing and

maintaining the litigation.

The Supreme Court's decision in *Octane Fitness* does not change the

fact that Sigmapharm's invalidity and unenforceability counterclaims were

never decided by the District Court (and, in fact, were dismissed with

prejudice), or that the District Court, upon reviewing the evidence presented,

concluded, in its discretion, that Sigmapharm had "failed to establish any

misconduct on the part of Gilead during the litigation *or* in the procurement

of its patents, *or* that the litigation was objectively baseless *or* brought in

subjective bad faith."  (A13 (emphasis added).)

Moreover, the factual bases for Sigmapharm's claim that this case is

exceptional are simply wrong.  Sigmapharm has not alleged inequitable

conduct, and it has not one shred of evidence to show that any person owing

a duty of disclosure to the PTO                    Redacted

                         Accordingly, Sigmapharm's unsubstantiated statements

regarding                              Redacted

are irrelevant.  Similarly, there is no evidence to support the position that

Gilead litigated the '340 Patent                    Redacted


        The '340 Patent was valid when the litigation was initiated and

remains valid now.

        Additionally, Sigmapharm concedes              Redacted

                                              which, as explained in more

detail below, means that they do not trigger a § 102(b) bar.

        Finally, Sigmapharm is disingenuous in arguing that the case is

"exceptional" because Gilead's lawsuit "cost Sigmapharm millions of

dollars of missed sales of its ANDA product."  (SB 15.)  This lawsuit

involved two Gilead patents, one of which – the '159 Patent – Sigmapharm

stipulated to infringing.  (A504.)  Thus, regardless of the '340 Patent,

Sigmapharm was not free to market its product until the '159 Patent expired

in September 2014 or until the '159 Patent was invalidated.

        Further, Sigmapharm did not have tentative FDA approval for its

ANDA product while the lawsuit was pending so it could not have "missed

sales" even if there had been no lawsuit (and therefore no 30-month stay of final FDA approval for the ANDA product pursuant to 21 U.S.C. § 355(j)(5)(B)(iii)). Sigmapharm did not obtain FDA approval to sell its product until August 2013, six months after the 30-month stay would have expired had the case not been dismissed at Gilead's urging, and five months *after* Gilead granted the covenant not to sue. Sigmapharm's assertion that the lawsuit was "exceptional" because it occasioned "millions of dollars of missed sales of its ANDA product" (SB 15) provides a basis for finding this case exceptional is nothing but a blatant attempt to mislead the Court.

## STANDARD OF REVIEW

This Court "review[s] all aspects of a district court's § 285 determination for abuse of discretion." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, ___U.S. ___, 134 S. Ct. 1744, 1747 (2014). Implicit therein is the reviewing court's power to correct a district court's legal or factual errors. *Id.* at 1748, n. 2. Since ***all*** aspects of the district court's ruling are reviewed for an abuse of discretion, there is no mixed standard of review. *See id.* at 1747. In particular, this Court should not undertake *de novo* review of the District Court's conclusions of law, as Sigmapharm suggests. (SB 20.)

## ARGUMENT

I.     **This Court Should Affirm The District Court's Denial Of Attorneys' Fees**

This Court should affirm the District Court's denial of attorneys' fees under the new *Octane Fitness* standard because this case does not stand out with respect to the substantive strength of Gilead's litigation position or the manner in which the case was litigated. *See Octane Fitness*, 134 S. Ct. at 1756.

A. **The Court Has The Power To Affirm The District Court's Denial Of Attorneys' Fees Without The Need For Remand**

When the District Court denied Sigmapharm's motion, this Court's binding decision in *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.* governed the question of whether a case was "exceptional" under § 285. Since then, the Supreme Court has clarified how the assessment of whether a case is "exceptional" should be made. *See Octane Fitness*, 134 S. Ct. at 1756. In a situation where it is apparent on appeal that a district court did not undertake the correct legal analysis, an appellate court is within its power to affirm (as opposed to remand) where the facts are essentially undisputed and there is a clear basis for affirming. For example, in *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804 (Fed. Cir. 1990), the defendant appealed the district court's one-sentence denial of attorneys' fees, but this Court refused to remand because "[i]t would be but a wasteful and fruitless exercise" given that "the record is replete with undisputed facts that unequivocally support the district court's action." *Id.* at 814. "A remand, with its accompanying expenditure of additional judicial resources in a case thought to be completed" should be made in limited circumstances such as when "the appellate court has no way open to it to affirm or reverse the district court's action under review." *Id.*; *see also Premium Balloon Accessories, Inc. v. Creative Balloons Mfg., Inc.*, ___ Fed.

14

App'x ___, Case Nos. 13-3587, 13-4049, 13-4130, 2014 WL 3891299, at *11-12 (6th Cir. Aug. 7, 2014) (reversing the pre-*Octane Fitness* grant of attorneys' fees under the new *Octane Fitness* standard).

Here, this Court has a clear path to affirm the District Court given how little, if anything, is actually disputed. For example, it is undisputed that Sigmapharm's invalidity and unenforceability claims were dismissed with prejudice (A895-96); it is undisputed that Sigmapharm stipulated to infringement of the '159 Patent (A504), thereby preventing Sigmapharm from launching its ANDA product regardless of the '340 Patent; and it is undisputed that Sigmapharm did not have FDA approval to market its product until months after the District Court dismissed the claims and counterclaims with prejudice. It is also undisputed that the District Court never decided whether the '340 Patent was invalid or unenforceable and that the '340 Patent remains valid and enforceable today. Given this undisputed record supporting the District Court's denial of Sigmapharm's attorneys' fees motion, this Court has the authority to affirm the denial without remand, and Gilead respectfully requests that this Court do so.

### B. This Court Should Affirm Because This Case Is Not Exceptional Under The *Octane Fitness* Standard

In *Octane Fitness*, the Supreme Court held that determining whether a case is "exceptional" should involve a consideration of the totality of the

circumstances on a case-by-case basis. *Octane Fitness*, 134 S. Ct. at 1754, 1756. An "exceptional" case, the Supreme Court held, is "one that stands out from others with respect to the substantive strength of a party's litigation position . . . or the unreasonable manner in which the case was litigated." *Id.* at 1756. *Octane Fitness* further held that a party seeking attorneys' fees does not have to establish its entitlement to such fees by clear and convincing evidence. *Id.* at 1758

*Octane Fitness* did ***not*** change the statutory presumption that a patent is valid and that an accused infringer must prove invalidity by clear and convincing evidence. *See* 35 U.S.C. § 282; *see also Microsoft Corp. v. i4i Ltd.*, ___U.S.___, 131 S. Ct. 2238, 2242 (2011). Nor did *Octane Fitness* alter the burden of proving inequitable conduct by clear and convincing evidence. *See Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1287-88 (Fed. Cir. 2011) (en banc).

Here, the only bases for Sigmapharm's attorneys' fees motion are its claims that the '340 Patent should be found invalid and unenforceable. However, those claims were dismissed with prejudice, and, in connection with Sigmapharm's attorneys' fees motion, the District Court determined that Sigmapharm had failed to demonstrate by clear and convincing evidence that the '340 Patent was invalid or unenforceable. (A11-12.)

16

Thus, regardless of the new standard for "exceptionality" set forth in *Octane Fitness*, the District Court properly applied the clear and convincing evidence standard to the bases underlying Sigmapharm's attorneys' fees motion.

In its initial attorneys' fees motion and again in this appeal, Sigmapharm offers two reasons why Gilead's assertion of the '340 Patent makes this case "exceptional." First, Sigmapharm argues that Gilead's defense against the on-sale bar and associated inequitable conduct charge are "beyond weak." (A911; SB 26.) Second, Sigmapharm argues that Gilead litigated this case in an unreasonable manner because Gilead brought an infringement claim on a patent it knew or should have known was invalid and unenforceable, and it maintained those claims after Sigmapharm amended its DMF. (A917; SB 31-32.)

The District Court, in evaluating Sigmapharm's arguments, found that "Sigmapharm has failed to establish *any* misconduct on the part of Gilead during the litigation or in the procurement of its patents." (A13 (emphasis added).) With respect to the '340 Patent, the District Court concluded that "Gilead had *both* a subjective and objective good faith basis *and* an objective basis for maintaining its infringement claims." (A13 (emphasis added).) The District Court's analysis, therefore, squarely addressed the

17

questions posed by the *Octane Fitness* standard – namely, whether Gilead's defense of the '340 Patent was substantively weak (*i.e.*, objectively baseless) and whether Gilead unreasonably litigated the case by bringing and maintaining its claims (*i.e.*, subjective bad faith). This Court can and should affirm the District Court's denial of attorneys' fees on the record before it, given that for the reasons provided below in Sections II and III, *infra*, it is clear that Gilead's defenses against the on-sale bar and inequitable conduct charge are not "weak" and thus that the District Court was well within its discretion to conclude that Gilead had adequate bases to initiate and maintain its claims of infringement.

The foregoing analysis is consistent with those of other courts in the wake of *Octane Fitness*. *Octane Fitness* states that "a case presenting ***either*** subjective bad faith ***or*** exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Octane Fitness*, 134 S. Ct. at 1757 (emphasis added). Thus, when applying *Octane Fitness* on a motion for reconsideration, Federal Circuit Judge Bryson (sitting by designation) concluded that he would again deny attorneys' fees, reasoning that the defendant's failure to satisfy either the objective or subjective prongs of *Brooks Furniture* "largely answers the question of whether this case is exceptional under the Supreme Court's new test." *Bianco v. Globus*

18

*Med., Inc.*, Case No. 12-147, 2014 WL 1904228, at *2, *5 (E.D. Tex. May 12, 2014) (addressing first whether the plaintiff's claim was objectively baseless and second whether the plaintiff brought his claim in subjective bad faith).

Likewise, Federal Circuit Judge Dyk (also sitting by designation) reviewed the *Octane Fitness* decision and found that "[t]he predominant factors to be considered, though not exclusive, are those identified in *Brooks Furniture*[.]" *Stragent, LLC v. Intel Corp.*, Case No. 11-421, Slip Op. at 6 (E.D. Tex. Aug. 6, 2014) (noting further that *Octane Fitness* is "not an invitation to a 'kitchen sink' approach where the prevailing party questions each argument and action of the losing party"); *see also CreAgri, Inc. v. Pinnaclife, Inc.*, Case No. 11-6635, 2014 WL 2508386, at *5-6, *9-12 (N.D. Cal. June 3, 2014) (denying attorneys' fees motion under § 285 after noting that "[u]nder the Supreme Court's new test, a case presenting either subjective bad faith or exceptionally meritless claims may . . . warrant a fee award," but concluding that defendant had not shown plaintiff's infringement claim to be objectively baseless and thus the case was not exceptional); *EON Corp. IP Holdings, LLC v. FLO TV Inc.*, Case No. 10-812, 2014 WL 2196418, at *2 (D. Del. May 27, 2014) (analyzing the substantive strength of the plaintiff's case and concluding that the case was

19

not so "conspicuously deficient so as to justify the award of attorneys' fees" notwithstanding that the asserted claims were invalid as indefinite); *SFA Sys., LLC v. 1-800-Flowers.com, Inc.*, Case Nos. 09-340, 11-399, Slip Op. at 4-5 (E.D. Tex. July 8, 2014) (finding that defendant's "bare allegations that it would have prevailed on the merits" were not sufficient to make the case exceptional and that defendant failed to provide evidence that the substantive strength of plaintiff's litigating position stood out from other cases); *EON Corp. IP Holdings, LLC v. Cisco Sys., Inc.*, Case No. 12-01011, 2014 WL 3726170, at *5-6 (N.D. Cal. July 25, 2014) (denying attorneys' fees, noting that plaintiff's infringement claims were not objectively baseless and the plaintiff's success in other forums on the same issue undermined the defendant's assertion that the plaintiff knew or should have known its claims were baseless).

The District Court here concluded, in its discretion based on the facts before it, that "Sigmapharm has failed to establish *any* misconduct on the part of Gilead during the litigation or in the procurement of its patents" and that, with respect to the '340 Patent, "Gilead had *both* a subjective and objective good faith basis *and* an objective basis for maintaining its infringement claims." (A13 (emphasis added).)  Sigmapharm thus is even further from establishing the alleged "exceptional" nature of this case than

were the moving parties in the above-cited, post-*Octane Fitness* cases. The analysis undertaken by the District Court (although conducted under the then-appropriate *Brooks Furniture* standard) fully satisfies the *Octane Fitness* standard. As such, this Court can and should affirm the District Court's conclusion that this case is not exceptional and affirm the denial of attorneys' fees.

## II.    The '340 Patent Is Not Invalid Due To Any On-Sale Bar

As the foundation for its claim that this case is "exceptional" under § 285, Sigmapharm's appeal seeks to resurrect its unsuccessful argument that the '340 Patent is invalid because                Redacted

raises an on-sale bar under § 102(b) that renders the '340 Patent invalid. For the following reasons, Sigmapharm is wrong. There is no on-sale bar; the '340 Patent is valid; and Gilead's position on the '340 Patent in this litigation thus was not a "weak" one.

### A.    The District Court Did Not Err In Finding That      Redacted   Were For Experimental Use

Sigmapharm does not dispute that              Redacted

CONFIDENTIAL MATERIAL REDACTED

Redacted

Sigmapharm is wrong. It is beyond dispute that sales of patented inventions for experimental use negate the § 102(b) on-sale bar. *Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55, 64 (1998) ("The law has long recognized the distinction between inventions put to experimental use and products sold commercially."); *In re Ceccarelli*, 401 Fed. App'x 553, 554 (Fed. Cir. 2010) ("A sale for experimental use negates the on-sale bar."); *EZ Dock, Inc. v. Schafer Sys., Inc.*, 276 F.3d 1347, 1352 (Fed. Cir. 2002) ("In *Pfaff,* the Supreme Court expressly preserved the experimental use or sale negation of the section 102 bars . . . ."); *id.* at 1356 (Linn, J., concurring) ("*Pfaff* changed the test for when an on-sale bar is triggered, but it did not change

---

[5] Whether a use is experimental under § 102(b) is a question of law based on underlying issues of fact. *Tone Bros., Inc. v. Sysco Corp.,* 28 F.3d 1192, 1197 n.3, n.4 (Fed. Cir.1994), *cert. denied* 514 U.S. 1015 (1995). At all times, the burden remains with the party asserting a § 102(b) bar to prove by clear and convincing evidence that the bar applies. *Id.* at 1197, n.4. As explained below, Sigmapharm falls far short of carrying that burden.

the experimental use doctrine or the timing or nature of events giving rise to an experimental use exception.").

Testing to determine whether the invention will work for its intended purpose is evidence of experimental use. *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 550-51 (Fed. Cir. 1990) (the "period of experimental use continues until after the inventor 'conducts tests needed to convince himself that the invention is capable of performing its intended purpose in its intended environment.'") (quoting *Gould Inc. v. United States*, 579 F.2d 571, 583 (Ct. Cl. 1978)).

Since *Pfaff,* this Court and others have found that clinical trials of patented drugs and drug compositions may constitute experimental uses that negate a § 102(b) bar. *See, e.g., Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369, 1380-81 (Fed. Cir. 2006) (upholding the finding that clinical trials of patented drug compound and drug compositions constituted experimental use that negated § 102(b) bar); *Bayer Schering Pharma AG v. Barr Labs., Inc.*, Case No. 05-2308, 2008 WL 628592 at *43 (D.N.J. Mar. 3, 2008) (finding that U.S. clinical trial of patented drug compositions constituted experimental use that negated § 102(b) bar); *SmithKline Beecham Corp. v. Apotex Corp.*, 286 F. Supp. 2d 925, 932-38 (N.D. Ill. 2001) (granting patentee's summary judgment motion for no invalidity for

23

public use and finding that a clinical trial constituted experimental use); *see also Dey, L.P. v. Sunovion Pharms., Inc.,* 715 F.3d 1351, 1356-58 (Fed. Cir. 2013) (reversing summary judgment of invalidity based upon finding that alleged infringer's clinical trial of alleged infringing drug composition constituted a public use under §102(b)). Indeed, Gilead is unaware of ***any*** extant decision holding that the sale of a patented drug or drug composition for use in a clinical trial raises a § 102(b) bar.

Despite the weight of the law on Gilead's side, Sigmapharm persists in asserting that "it is well-settled in this Court that experimentation to support an agency requirement for approval, *e.g.*, clinical studies in support of an application to the FDA for approval of a new drug, is not the same as the patent law-based 'experimental use' exception to the on-sale bar." (SB 17-18; *see also* SB 30.) But Sigmapharm's four cited authorities – *Hamilton Beach Brands, Inc. v. Sunbeam Prods., Inc.*, 726 F.3d 1370 (Fed. Cir. 2013); *Pennwalt Corp. v. Akznona Inc.*, 740 F.2d 1573 (Fed. Cir. 1984); *Abbott Labs. v. Geneva Pharms.*, 182 F.3d 1315 (Fed. Cir. 1999), and *SmithKline Beecham Corp. v. Apotex Corp.*, 365 F.3d 1306 (Fed. Cir. 2004) – fail to support that assertion.

*Hamilton Beach* concerns a patented cooking device. It does not concern "clinical studies" or "an agency requirement for approval," and

24

moreover it expressly declines to touch the issue of experimental use. *See* 726 F.3d at 1377, n.2 ("No experimental use defense has been asserted by Hamilton Beach in this case, however – neither at the trial court level nor before this court. 'Experimental use' is simply not at issue. There is, thus, no threat that this decision will have any impact on that defense."). Thus, contrary to Sigmapharm's assertions, the District Court did not err in not addressing *Hamilton Beach* in connection with the parties' experimental use arguments.

*Pennwalt Corp.* likewise does not concern "clinical studies" or "an agency requirement for approval." *Pennwalt* instead upheld a finding that commercial sales of a patented pesticide to distributors, who then sold the pesticide on to farmers, raised a § 102(b) bar. *See* 740 F.2d at 1576, 1581. Although the sales were made pursuant to an EPA temporary permit, the *Pennwalt* court found that the purpose of the EPA temporary permit was to protect the environment and that the existence of the permit thus was insufficient to show that the sales were for an experimental use under § 102(b), *i.e.*, "a *bona fide* effort to perfect the invention or to ascertain whether it will answer its intended purpose." *Id.* at 1580.[6] Unlike the EPA

---

[6] Sigmapharm's parenthetical description of *Pennwalt* at page 30 of its opening brief ("the 'experimental use' exception does not apply to a clinical study in support of an application to the FDA for approval of a new drug") is

temporary permit in *Pennwalt*,        Redacted


[7]


Nor does *Abbott Labs.* concern "clinical studies" or "an agency requirement for approval." In *Abbott Labs.*, the court found that third-party sales of the patented crystalline form of the drug terazosin hydrochloride raised a § 102(b) bar. However, *Abbott Labs.* does not indicate whether the sales were for purposes of clinical trials, and *Abbott Labs.* – like *Hamilton Beach* – does not touch the issue of experimental use.

*SmithKline Beecham Corp. v. Apotex Corp*. deserves special mention. In that 2004 decision, a Federal Circuit panel found that clinical trials conducted to determine the antidepressant properties of the drug hemihydrate paroxetine hydrochloride did not qualify as an experiment use of the patented invention because the patent claimed only hemihydrate paroxetine hydrochloride and not its antidepressant properties. *See* 365 F.3d

---

grossly inaccurate. *Pennwalt* does not mention clinical studies, the FDA, or drugs.

[7] And, as opposed to the sales in *Pennwalt* that were to distributors who, by definition, distribute in the marketplace,       Redacted

.

at 1318-20. But the 2004 panel decision relied upon by Sigmapharm was **vacated and superseded** a year later in the *en banc* decision *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1328 (Fed. Cir. 2005) (en banc), which omitted the 2004 decision's discussion of experimental use. That 2005 *en banc* decision, followed closely by *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369 (Fed. Cir. 2006) (discussed above), confirmed – contrary to Sigmapharm's representations – that clinical trials of a patented drug can negate a § 102(b) bar, even where the claims of the patent do not expressly recite the properties of the drug.[8]

In sum, it is undisputed that                    Redacted

and that clinical trials have been held to be experimental uses that negate any § 102(b) bar. The District Court was well within its discretion to conclude that          Redacted

did not raise a § 102(b) bar.

---

[8] These decisions align with longstanding precedent that a chemical compound and its properties are inseparable. *E.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.*, 655 F.3d 1291, 1307 (Fed. Cir. 2011) (citing *In re Papesch*, 315 F.2d 381, 391 (C.C.P.A. 1963)).

**B.** **The District Court Did Not Err In Not Finding That** Redacted **Were Reduced To Practice**

Sigmapharm asserts that (i) "a composition, such as a tablet containing crystalline AD, is reduced to practice when it is manufactured in physical form" (SB at 19); (ii) Redacted

were ready for patenting, or whether the 'invention' of the '340 Patent had been reduced to practice" (SB 19; *see also* SB 29); and (iii) the District Court thus improperly "ignored" the "holding" in *Hamilton Beach* "that if the invention is reduced to practice and a sale occurs, the 'experimental use' exception no longer applies." (SB 17; *see also* SB 27-28.)

Sigmapharm is wrong. Contrary to Sigmapharm's representations, there is no holding in *Hamilton Beach* that "if the invention is reduced to practice and a sale occurs, the 'experimental use' exception no longer applies." As explained above, there is no holding in *Hamilton Beach* concerning experimental use *at all*. And, as the District Court correctly observed, "if there is adequate proof that a device was sold primarily for experimentation, the first prong of *Pfaff* would not be met and it would be unnecessary to consider either whether the device was an embodiment of the claimed invention." (A10, quoting *Allen Eng'g Corp., v. Bartell Indus., Inc.*,

299 F.3d 1336, 1353 (Fed. Cir. 2002) (emphasis added)).  The District Court
thus did not err in not directly addressing *Hamilton Beach,* as it properly
found that                                     Redacted

Sigmapharm's reduction-to-practice arguments ignore post-*Pfaff*
precedent specifically holding that a patented drug composition is not
necessarily reduced to practice until after clinical trials have been conducted
to determine whether the composition will work for its intended purpose.  In
*In re Omeprazole Patent Ltig.*, 536 F.3d 1361, 1372-74 (Fed. Cir. 2008), this
Court upheld a finding that a patented drug composition was not reduced to
practice, and thus not "ready for patenting" under *Pfaff*, until Phase III
clinical trials were complete because those trials were needed to determine
whether the composition would possess sufficient long-term and *in vivo*
stability to treat gastrointestinal disease effectively.  In so holding, the Court
noted that "[t]o demonstrate reduction to practice, a party must prove that
the inventor (1) 'constructed an embodiment or performed a process that met
all the limitations' and (2) 'determined that the invention would work for its
intended purpose.'" *Id.* at 1373.[9]  Similarly, in *Bayer Schering Pharma AG*

[9] The patents at issue in *Omeprazole* did not include any claims reciting any
long-term or *in vivo* stability limitations.

*v. Barr Labs., Inc.*, Case No. 05-2308, 2008 WL 628592 at *43-44 (D.N.J. Mar. 3, 2008), the District Court for the District of New Jersey found that a patented contraceptive drug composition was not reduced to practice before a United States Phase III clinical trial was complete. According to the *Bayer* court, the United States clinical trial was needed to determine whether the composition would be effective in the United States population, notwithstanding that there was already evidence to show that it was effective in European populations. *Id.*

Like the patentees in *Omeprazole* and *Bayer*, Gilead could not have determined whether                Redacted

Thus, in view of *Omeprazole* and *Bayer*, the '340 Patent was not reduced to practice, *Hamilton Beach* would not have changed the District Court's decision, and not considering it did not amount to an abuse of its discretion.

**C.  The Lack Of A Supplier Or Secret Sale
Exception To The On-Sale Bar Is Irrelevant**

Sigmapharm asserts that "there is no exception to the 'on-sale' bar for suppliers, nor is there an exception if the sale took place in secret." (SB 22-23.) Those assertions, and the decisions Sigmapharm cites to support them, are irrelevant. The lack of a supplier or secret sale exception does not

CONFIDENTIAL MATERIAL REDACTED

disprove the existence of the experimental use exception and its application

to clinical trials. Nor does it rebut the post-*Pfaff* decisions discussed above

holding that clinical trials can either negate a § 102(b) bar or vitiate the *Pfaff*

ready-for-patenting condition required to apply a § 102(b) bar.[10]

### D. There Is No Evidence Of Inequitable Conduct

Sigmapharm asserts that Gilead employees (including inventors and

attorneys, among others) knew about       Redacted

during the time that the '340 Patent was being prosecuted before

the PTO, and that those individuals committed "inequitable conduct" by

failing to disclose      Redacted      to the PTO. (SB 14-15.)

Sigmapharm again is wrong. First, as explained above,    Redacted

are not invalidating. Second, as explained by the

District Court, the mere fact that      Redacted

---

[10] Sigmapharm also tries to analogize this case to others wherein the **finding** of a § 102(b) bar, coupled with a finding that the patentee in bad faith concealed the bar, led to an award of attorneys' fees, (SB 28-29). *See, e.g.*, *Brasseler USA I, L.P. v. Stryker Sales Corp.*, 182 F.3d 888, 890 (Fed. Cir. 1999) (noting that the commercial nature of the sale and that the invention was reduced to practice were undisputed and remanding for a determination of whether the case was exceptional); *Brasseler USA I, L.P. v. Stryker Sales Corp.*, 93 F. Supp. 2d 1255, 1260-65 (S.D. Ga. 1999) (awarding attorneys' fees because the patentees committed inequitable conduct). However, for the reasons stated above, here there is **no finding**, and **no basis to find**, either a §102(b) bar, or the bad-faith concealment of facts that would support such a bar.

CONFIDENTIAL MATERIAL REDACTED

Redacted

Indeed, Sigmapharm did not ask the inventors or corporate representative it

deposed about                                    Redacted

                             Third, even *if* there was knowledge on the part

of Gilead attorneys and inventors of                Redacted

(which the District Court properly found Sigmapharm had not established),

there is no evidence that                Redacted                    were

material and subject to a duty of disclosure to the PTO under 37 C.F.R.

1.56.[11]

    Fourth, Sigmapharm's repeated assertion that Gilead personnel

"should have known" that the '340 Patent was invalid in view   Redacted

                                        is irrelevant.  To show

inequitable conduct, one "must prove by clear and convincing evidence that

the applicant knew of the reference, ***knew that it was material***, and made a

---

[11] Sigmapharm relies on                Redacted

32

deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290 (emphasis added). By contrast, "[p]roving that the applicant knew of a reference, ***should have known of its materiality***, and decided not to submit it to the PTO does not prove specific intent to deceive." *Id.* 1290 (emphasis added). Here, because there is no evidence that anyone at Gilead knew Redacted

Sigmapharm's suggestion that the '340 Patent is unenforceable based on Gilead's "inequitable conduct" must fail.

Moreover, as there is not one shred of evidence to show that anyone deliberately withheld allegedly "material" information in connection with the prosecution of the '340 Patent, those unsubstantiated allegations cannot form the basis of an "exceptional" case claim for attorneys' fees. *See Highway Equip. Co. v. FECO, Ltd.*, 469 F.3d 1027, 1036-37 (Fed. Cir. 2006) (refusing to find that an unproven inequitable conduct claim made the case "exceptional" after the plaintiff offered the defendant a covenant not to sue prior to trial); *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1366-67 (Fed. Cir. 2004) (affirming denial of attorneys' fees on the basis of inequitable conduct where the merits of the inequitable conduct claim had not been litigated); *McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1372 (Fed. Cir. 2003) ("We have not previously held any party liable

for attorney's fees for . . . enforcing a presumptively valid patent, even where that patent was later invalidated, in the absence of clear and convincing evidence of inequitable conduct or misconduct during litigation.").

The District Court was well within its discretion to conclude that Gilead had an objective and subjective good faith basis to assert the '340 Patent, as well as a basis for defending the enforceability of the patent. Sigmapharm's unproven claim of inequitable conduct cannot make this an exceptional case so as to justify the award of attorneys' fees. *See Stragent LLC*, Case No. 11-421, Slip Op. at 6, 9, 10 (Dyk, J., sitting by designation) (pointing out three times that the mere fact that a party opposing attorneys' fees made an unsuccessful argument is not relevant to whether the case is exceptional).

## III. Gilead Did Not Litigate Its Validity, Enforceability, And Infringement Positions In An Unreasonable Manner

Sigmapharm's assertion that attorneys' fees are warranted because the case was litigated in an unreasonable manner (SB 31) is not consistent with the facts. Sigmapharm first contends that Gilead litigated unreasonably because it knew that the '340 Patent was invalid and unenforceable, but as explained *supra*, Sigmapharm has not established by clear and convincing evidence that Gilead acted unreasonably in procuring the '340 Patent or even

that a § 102(b) bar is applicable.  As such, the District Court was well within

its discretion to conclude that Gilead's initiation and litigation of this case

was not something that could be viewed as "unreasonable."

Sigmapharm's second position with regard to Gilead's allegedly

improper continuation of the lawsuit is based upon      Redacted

Sigmapharm argues that Gilead should have immediately dropped

the litigation (at least as to the '340 Patent; it had already stipulated to

infringement of the other patent-in-suit)      Redacted

Yet again, Sigmapharm is wrong.  As noted above,

Redacted

Redacted

Moreover, Sigmapharm's Answer to the Amended Complaint – Red
acte

CONFIDENTIAL MATERIAL REDACTED

Redacted

the District Court was again well within its discretion to conclude that Gilead had not maintained the litigation as to the '340 Patent in an unreasonable manner.  The District Court therefore did not err in not finding the case "exceptional" and denying Sigmapharm's request for attorneys' fees.

## CONCLUSION

On the heels of nearly a year of generic exclusivity for its AD product, Sigmapharm asks this Court to reverse (or vacate and remand) the District Court's decision denying its motion for attorneys' fees. The concluding paragraph of Sigmapharm's moving brief asks for the requested relief "in view of *Octane* and *Highmark*." Gilead submits that the Supreme Court's *Octane* and *Highmark* decisions do not require this Court to vacate or remand, but rather to affirm the decision below because the District Court did not abuse its discretion, and thus the District Court did not err in declining to find this case exceptional for purposes of § 285.

Given the facts and the governing law, this case does not "stand out" either with respect to the substantive strength of Gilead's litigation position or the manner in which the case was litigated. Irrespective of the District Court's conclusion that Sigmapharm had not met its burden of proving that the case was exceptional by clear and convincing evidence, it is undeniable that Sigmapharm failed to prove the elements necessary to make this an exceptional case. The District Court's conclusion that Sigmapharm had failed to establish by clear and convincing evidence that         Redacted

invalidating under § 102(b) was sound and not an abuse of discretion; the District Court's conclusion that Sigmapharm failed to establish by clear

CONFIDENTIAL MATERIAL REDACTED

and convincing evidence that Gilead acted inequitably in the procurement of the '340 Patent was sound and not an abuse of discretion (especially in light of the fact that Sigmapharm's claim in this regard had already been dismissed with prejudice); the District Court's conclusion that Gilead acted reasonably in asserting the '340 Patent was sound and not an abuse of discretion; and the conclusion by the District Court that Gilead's continued pursuit of the litigation                    Redacted

was justified was sound and not an abuse of discretion  Redacted

.

The District Court was well within its discretion – under both the old *Brooks Furniture* standard and the new *Octane Fitness* standard – to conclude that the circumstances of this case do not make it "exceptional." This Court should give the District Court the deference it is entitled to under *Highmark* and affirm the decision below.

Respectfully submitted,

By: _____
    TIMOTHY J. KELLY
    CHRISTOPHER E. LOH
    NICHOLAS M. CANNELLA
    FITZPATRICK, CELLA, HARPER &
    SCINTO
    1290 Avenue of the Americas
    New York, New York 10104
    (212) 218-2100

    *Attorneys for Plaintiff-Appellee*
    *Gilead Sciences, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## Gilead Sciences v. Sigmapharm Labs
Appeal No. 2014-1456

## **PROOF OF SERVICE**

The undersigned counsel for Plaintiff-Appellee Gilead Sciences, Inc.

certifies that, on August 21, 2014, the foregoing **BRIEF FOR**

**PLAINTIFF-APPELLEE GILEAD SCIENCES, INC.** was filed

electronically with the U.S. Court of Appeals for the Federal Circuit by

means of the Court's CM/ECF system.

The undersigned also certifies that, on August 21, 2014, the foregoing

**BRIEF FOR PLAINTIFF-APPELLEE GILEAD SCIENCES, INC.** was

caused to be served on the following counsel of record by means of

electronic mail:

John E. Rosenquist
LEYDIG, VOIT & MAYER
Two Prudential Plaza
180 N. Stetson Ave., Ste. 4900
Chicago, IL 60601-6731
Tel: (312) 616-5680
Fax: (312) 616-5700
jrosenquist@leydig.com

Robert L. Stolebarger
Kenneth L. Marshall
BRYAN CAVE LLP
560 Mission Street, Suite 2500
San Francisco, CA 94105
Tel: (415) 675-3400
Fax: (415) 675-3434
klmarshall@bryancave.com
robert.stolebarger@bryancave.com

Ameer Gado
Anthony Re Friedman
BRYAN CAVE LLP
211 North Broadway, Suite 3600
One Metropolitan Square
St. Louis, Missouri 63102
Tel: (314) 259-2000
Fax: (314) 259-2020
aagado@bryancave.com
anthony.friedman@bryancave.com

*Counsel for Defendant-Appellant Sigmapharm Laboratories, LLC*

Dated: August 21, 2014          By: _____

TIMOTHY J. KELLY
FITZPATRICK, CELLA, HARPER &
SCINTO
1290 Avenue of the Americas
New York, New York 10104
(212) 218-2100

*Attorney for Plaintiff-Appellee
Gilead Sciences, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### *Gilead Sciences v. Sigmapharm Labs*
### Appeal No. 2014-1456

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME, TYPE-FACE AND TYPE-STYLE REQUIREMENTS

The undersigned counsel for Plaintiff-Appellee Gilead Sciences, Inc. hereby certifies that this brief by Plaintiff-Appellee complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief contains 7,485 words, excluding portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii). The undersigned counsel also certifies that this brief complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). The brief was prepared in Microsoft Word 2003 using a proportional 14-point Times New Roman type-face.

Dated: August 21, 2014       By: _____

TIMOTHY J. KELLY
FITZPATRICK, CELLA, HARPER &
SCINTO
1290 Avenue of the Americas
New York, New York 10104
(212) 218-2100

*Attorney for Plaintiff-Appellee*
*Gilead Sciences, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## Gilead Sciences v. Sigmapharm Labs
Appeal No. 2014-1456

## <u>ADDENDUM</u>

1. *SFA Sys., LLC v. 1-800-Flowers.com, Inc.*, Case Nos. 09-340, 11-399, Slip Op. (E.D. Tex. July 8, 2014)

2. *Stragent, LLC v. Intel Corp.*, Case No. 11-421, Slip Op. (E.D. Tex. Aug. 6, 2014)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

|  |  |  |
|---|---|---|
| **SFA SYSTEMS, LLC,** | § | |
| | § | |
| | § | **Case No. 6:09-CV-340** |
| **Plaintiff,** | § | **[Lead Case]** |
| | § | |
| **v.** | § | *Consolidated with* |
| | § | |
| **1-800-FLOWERS.COM, INC., et al.,** | § | **Case No. 6:11-cv-399** |
| | § | |
| **Defendants.** | § | |
| | § | |

## ORDER

Before the Court is Defendant Newegg, Inc.'s ("Newegg") Motion for Attorneys' Fees (Docket No. 461). Having considered the Motion and related briefing and for the reasons stated below, the Court hereby **DENIES** the Motion.

## BACKGROUND

SFA Systems, LLC ("SFA") filed this action alleging patent infringement against Newegg, along with several other Defendants, in August 2011. In April 2013, SFA moved to voluntarily dismiss its claims against Newegg under Federal Rule of Civil Procedure 41(a)(2), with each party to bear its own costs and fees. Docket No. 453. While Newegg did not object to the dismissal of this suit with prejudice, it did oppose paying its own costs and fees. Docket No. 455 at 1. The Court granted SFA's Motion in part, dismissing with prejudice all claims and counterclaims in this action, but also granted Newegg leave to file this Motion and a motion for its bill of costs. Docket No. 459. Newegg now seeks over $1.2 million in attorneys' fees under 35 U.S.C. § 285, 28 U.S.C. § 1927, and the Court's inherent power. Although all briefing on this Motion was filed prior to the Supreme Court's recent decision in *Octane Fitness, LLC v. Icon*

*Health & Fitness, Inc.*, 134 S. Ct. 1749, 1753 (2014), which rejected the prior Federal Circuit legal test for determining whether a case is exceptional under 35 U.S.C. § 285, the parties did not request leave for additional briefing and none was required to decide the Motion.

## APPLICABLE LAW

### *Exceptional Case Under 35 U.S.C. § 285*

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Prior to the Supreme Court's recent decision in *Octane Fitness*, Federal Circuit precedent required the prevailing party to produce clear and convincing evidence that the opposing party's claims were objectively baseless and brought with subjective bad faith to declare a case exceptional. *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381–82 (Fed Cir. 2005). Rejecting both the clear and convincing evidence standard and the two-part test, the Supreme Court held that an exceptional case under § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (concerning both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756. Further, district courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* at 1757. As the Supreme Court noted, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.*

### *28 U.S.C. § 1927 and the Court's Inherent Power*

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions

under § 1927 require "clear and convincing evidence that *every facet* of the litigation was patently meritless" and "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525–26 (5th Cir. 2002) (emphasis in original). These sanctions are designed to be punitive in nature and generally focus on the conduct of the litigation rather than the merits. *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 694 (5th Cir. 2010).

Similarly, courts retain an inherent power to impose sanctions for "bad faith conduct in litigation." *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001). The threshold to invoke the inherent power to sanction is high and is to be used only when a court finds that "fraud has been practiced upon it, or that the very temple of justice has been defiled." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).

## ANALYSIS

Here, Newegg argues it should be awarded attorneys' fees because SFA engaged in vexatious litigation and brought objectively baseless claims against Newegg in bad faith. Docket No. 461 at 12. Newegg contends that SFA never intended to try this case on the merits, but filed this action solely to extract a settlement. *Id.* Newegg supports this claim by asserting that SFA has engaged in a pattern of repeatedly suing defendants, then settling for far less than the potential damages recovery. *Id.* In this case in particular, Newegg argues, SFA avoided ever taking a substantive position by offering strategically vague claim construction positions and dismissing its claims just before expert reports were due. *Id.* at 13–14. Additionally, Newegg contends SFA's claims are objectively baseless because the patents asserted here are both invalid, in light of prior art, and not infringed, because the patents are directed to real-world processes while the accused systems are exclusively online retail systems. *Id.*

3

SFA argues that it has not engaged in any misconduct in this case and that its claims against Newegg were neither objectively baseless nor brought in bad faith. Docket No. 464 at 5–6. To support its position, SFA cites that the Court rejected Newegg's proffered claim constructions and denied Newegg's motion for summary judgment of indefiniteness, indicating that SFA's patents may subject to a broader interpretation than Newegg claims and that material issues of fact existed here. *Id.* SFA also contends that its decision to dismiss its claims against Newegg was a business decision, made when SFA determined that risk and expense of trial outweighed the potential financial benefit of continuing this action. *Id.* at 7.

Newegg's primary complaint is that SFA has filed many suits against many defendants, therefore engaging in a pattern of abusive and vexatious litigation to extract settlement. Docket No. 461 at 1. However, the fact that SFA has filed several lawsuits against numerous defendants is insufficient to render this case exceptional. In many cases, patent infringement is widespread and the patent owner may be forced to revert to widespread litigation against several infringing parties to enforce its intellectual property rights.[1]

Even under the new, lower standard for an exceptional case designation, Newegg has provided no evidence that this case "stands out from others with respect to the substantive strength of [SFA's] litigating position." *Octane Fitness*, 134 S. Ct. at 1756. Newegg's attempt to limit the scope of the patent through claim construction was rejected when the Court declined to adopt any of Newegg's proposed constructions. *See* Docket No. 452. Further, Newegg's bare allegations that it would have prevailed on the merits are also insufficient to render this an exceptional case. For a case dismissed before trial to be designated exceptional, evidence of the frivolity of the claims must be reasonably clear without requiring a "mini-trial" on the merits for

---

[1] For example, Commonwealth Scientific and Industrial Research Organisation has been involved in litigation before this Court since 2005, including 16 separate actions and infringement claims against over 36 separate parties.

4

attorneys' fees purposes. Newegg has failed to meet that burden. Having provided insufficient evidence that SFA's claims or conduct render this case exceptional, Newegg is not entitled to attorneys' fees under 35 U.S.C. § 285.

Newegg has also failed to demonstrate it should be awarded fees under 28 U.S.C. § 1927 or through the Court's inherent power to sanction. Section 1927 is directed to the actions of the attorneys involved in the case, not the parties. Newegg failed to allege any specific actions by SFA's counsel that rise to the level of bad faith, improper motive, or reckless disregard of the duty owed to the Court, as required to support sanctions under § 1927. Further, a case must be "sufficiently beyond 'exceptional' within the meaning of § 285 to justify . . . a sanction under the court's inherent power." *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 966 (Fed. Cir. 2010) (quoting *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378–79 (Fed. Cir. 1994)). Since Newegg failed to show this case was exceptional under the new, lower standard—much less the more stringent exceptional test of *Brooks Furniture*—there is no justification to invoke the Court's inherent power to impose a sanction of attorneys' fees here.

Having failed to demonstrate that this is an exceptional case under 35 U.S.C. § 285 or that sanctions are warranted under 28 U.S.C. § 1927 or through the Court's inherent powers, Newegg's Motion is **DENIED**.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Newegg's Motion for Attorneys' Fees (Docket No. 461).

So ORDERED and SIGNED this 7th day of July, 2014.

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

Stragent, LLC,

    *Plaintiff*,

v.

                           Case No. 6:11-cv-421

Intel Corporation,

    *Defendant*.

### ORDER AND OPINION DENYING ATTORNEY'S FEES

Before the court is defendant Intel Corporation's (Intel) Amended Motion for Attorneys' Fees, May 8, 2014, ECF No. 355, along with plaintiff Stragent LLC's (Stragent) Response, May 22, 2014, ECF No. 359, Intel's Reply, May 29, 2014, ECF No. 360, and Stragent's Surreply, June 5, 2014, ECF No. 361. Intel bases its request for fees on § 285 of the Patent Act, which permits a court to award reasonable attorney's fees in "exceptional" patent cases. At this point, Intel has only asked the court to determine Stragent's liability for fees; it states that, if fees are awarded, it will later file a specific request detailing the amount of its fees. Am. Mot. for Atty's Fees 3; *see* Fed. R. Civ. P. 54(d)(2)(C) ("The court may decide issues of liability for fees before receiving submissions on the value of services."). For the reasons that follow, it is the court's judgment that this is not an exceptional case under § 285. Stragent therefore is not liable for Intel's attorney's fees, and Intel's motion is **DENIED**.

### BACKGROUND

Stragent commenced this suit in August 2011, when it filed a complaint accusing Intel of infringing claims of U.S. Patent Nos. 6,848,072 (the '072 patent), 7,028,244 (the '244 patent),

and 7,320,102 (the '102 patent) by manufacturing server processors with hardwired circuits configured to perform cyclic redundancy check (CRC) operations on transmitted data. Only Stragent's infringement allegations under claims 12 and 16 of the '072 patent proceeded to trial.

The trial resulted in a jury verdict finding the asserted claims of the '072 patent invalid and not infringed. Stragent did not file a post-verdict motion for judgment as a matter of law, and it did not appeal. Intel then moved for an award of attorney's fees under 35 U.S.C. § 285.

At the time Intel filed its motion for attorney's fees, the Supreme Court had not yet decided *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), a case involving the standard for awarding attorney's fees under § 285. The Supreme Court issued its decision in *Octane* between the filing of Intel's motion and Stragent's response. The court granted Intel leave to file an amended motion for attorney's fees incorporating the standard enunciated in *Octane*, and Intel filed its amended motion on May 8, 2014. The matter is now fully briefed and ready for decision.

## DISCUSSION

### I

Before addressing the merits of Intel's motion for attorney's fees, it is necessary to address the proper standard for evaluating whether an award of attorney's fees is appropriate. The Supreme Court's decision in *Octane* has changed the governing standard.

### A

Section 285 of the Patent Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. Section 285 restricts awards of attorney's fees to "exceptional" cases. Section 285 is itself an exception to what is often called

the "American Rule"—the rule in American courts that each party to a lawsuit generally pays its

own lawyers' fees, no matter who wins.

Until recently, the determination of whether a case was "exceptional" under § 285 was

governed by the standard enunciated by the Federal Circuit in *Brooks Furniture Manufacturing,*

*Inc. v. Dutailier International, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005). *Brooks Furniture* held:

> A case may be deemed exceptional when there has been some material
> inappropriate conduct related to the matter in litigation, such as willful
> infringement, fraud or inequitable conduct in procuring the patent, misconduct
> during litigation, vexatious or unjustified litigation, conduct that violates [Rule 11
> of the Federal Rules of Civil Procedure], or like infractions. Absent misconduct in
> conduct of the litigation or in securing the patent, sanctions may be imposed
> against the patentee only if both (1) the litigation is brought in subjective bad
> faith, and (2) the litigation is objectively baseless. . . . [T]he underlying improper
> conduct and the characterization of the case as exceptional must be established by
> clear and convincing evidence.

*Id.* at 1381–82 (citations omitted). Thus, under the *Brooks Furniture* standard, absent litigation

misconduct or inequitable conduct before the patent office, a defendant seeking attorney's fees

had to prove by clear and convincing evidence that (1) the litigation was brought in subjective

bad faith and (2) the litigation was objectively baseless.

In *Octane*, the Supreme Court rejected the *Brooks Furniture* test, stating that it "is unduly

rigid, and it impermissibly encumbers the statutory grant of discretion to district courts." 134 S.

Ct. at 1755. Instead, the Court looked to the history of the statute and earlier circuit case law for

the correct test.

Fee-shifting authority in patent cases originated in a predecessor to § 285, a provision of

the 1946 Patent Act which stated that a district court "may in its discretion award reasonable

attorney's fees to the prevailing party upon the entry of judgment in any patent case." 134 S. Ct.

at 1753 (quoting 35 U.S.C. § 70 (1946)). Although the provision ostensibly gave district courts

authority to shift fees in "any patent case," *id.*, courts exercised their discretion sparingly,

3

"view[ing] the award of fees not 'as a penalty for failure to win a patent infringement suit,' but as appropriate 'only in extraordinary circumstances.'" *Id.* at 1753 (quoting *Park-In-Theatres, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)). Awards of attorney's fees were made where necessary "to address 'unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force,' which made a case so unusual as to warrant fee-shifting." *Id.* (quoting *Park-In-Theatres*, 190 F.2d at 142).

In 1952, Congress amended and re-codified the fee-shifting provision to its present form, which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (1952). The *Octane* Court explained that "the addition of the phrase 'exceptional cases in § 285,'" though arguably substantive, "was 'for purposes of clarification only.'" 134 S. Ct. at 1753 (quoting *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 653 n.8 (1983)). The Senate Report accompanying the 1952 Act "explained that the new provision was 'substantially the same as' § 70, and that the 'exceptional cases' language was added simply to 'expres[s] the intention of the [1946] statute as shown by its legislative history and as interpreted by the courts.'" *Id.* n.2 (alterations in original) (quoting S. Rep. No. 82-1979, at 30 (1952), *reprinted in* 1952 U.S.C.C.A.N. 2394, 2423). The *Octane* Court concluded that both before and after the 1952 amendment (until *Brooks Furniture*) the regional circuits and later the Federal Circuit applied § 285 only in rare cases and "in a discretionary manner, assessing various factors to determine whether a given case was sufficiently 'exceptional' to warrant a fee award" and considering "the totality of the circumstances." *Id.* at 1753–54.

The Court explained that the pre-*Brooks Furniture* standard was the right one. *See id.* at 1753–54 (citing approvingly *Park-In-Theatres*, 190 F.2d at 142; *Pa. Crusher Co. v. Bethlehem Steel Co.*, 193 F.2d 445, 451 (3d Cir. 1951)). Rather than imposing a two-part test, the Court

held, § 285 "imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." *Id.* at 1755–56. "[A]n 'exceptional' case," the court explained further, "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* Citing an analogous case involving the attorney's fees provision of the Copyright Act, the Court cautioned that "'[t]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations we have identified.'" *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). The Court also concluded that entitlement to attorney's fees under § 285 need only be established by a preponderance of the evidence, rather than clear and convincing evidence as the Federal Circuit had held in *Brooks Furniture*. *Id.* at 1758.

**B**

A number of general guidelines can be discerned from the *Octane* Court's treatment of § 285 that guide this court in assessing whether an award of fees is proper in a given case.

First, awards of attorney's fees in patent cases should be reserved for rare and unusual circumstances, as the Court explained. *See id.* at 1756 ("In 1952, when Congress used the word in § 285 . . . '[e]xceptional' meant uncommon, rare, or not ordinary." (internal quotation marks omitted)). In this regard, the Court approvingly cited the Ninth Circuit's decision in *Park-In-Theatres*, decided under the original fee-shifting statute, which admonished that courts should only award attorney's fees where necessary to correct injustice:

5

[T]he payment of attorney's fees for the victor is not to be regarded as a penalty for failure to win a patent infringement suit. The exercise of discretion in favor of such an allowance should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, or some other equitable consideration of similar force, which makes it grossly unjust that the winner of the particular law suit be left to bear the burden of his own counsel fees which prevailing litigants normally bear.

190 F.2d at 142.

Second, courts contemplating an award of attorney's fees should consider the totality of the circumstances in the case. *See Octane*, 134 S. Ct. at 1756 ("District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."). The predominant factors to be considered, though not exclusive, are those identified in *Brooks Furniture*: bad faith litigation, objectively unreasonable positions, inequitable conduct before the PTO, litigation misconduct, and (in the case of an accused infringer) willful infringement. *Id.* at 1756 ("[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated."); *see also id.* n.6 (reciting various factors identified in *Fogerty*, 510 U.S. at 534 n.19). "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 1757. The totality of the circumstances standard is not, however, an invitation to a "kitchen sink" approach where the prevailing party questions each argument and action of the losing party in an effort to secure attorney's fees. In adopting the totality of the circumstances approach, the Supreme Court did not intend to burden the district court with reviewing in detail each position and each action taken in the course of litigation by the losing party.

Third, the mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on arguments that were frivolous or made in bad faith. *See id.* at 1753 (fee awards are not to be used "'as a penalty for failure to win a patent

6

infringement suit'" (quoting *Park-In-Theatres*, 190 F.2d at 142)). To impose fees on a party simply for making losing arguments would be the same in effect as fully adopting the English Rule, whereby the losing party always pays the winner's fees.

Fourth, the losing party's conduct need not be "independently sanctionable" to justify an award of fees. *Id.* at 1756. "A district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 1757. If a party's conduct is independently sanctionable, courts already have authority to force it to pay the other party's attorney's fees caused by the unreasonable conduct. *See* Fed. R. Civ. P. 11(c)(4); Fed. R. Civ. P. 37; 28 U.S.C. § 1927. Furthermore, as the *Octane* Court explained, the Supreme Court has long recognized courts' inherent power to shift fees "for 'willful disobedience of a court order' or 'when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'" *Octane*, 134 S. Ct. at 1758 (omission in original) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)). Interpreting § 285 to provide a duplicate remedy for conduct that is already sanctionable would render these other sources of fee-shifting authority "superfluous." *Id.*

Fifth, the statute is directed to exceptional "cases." Individual actions or arguments in the course of litigation that merit sanctions may be addressed through the court's inherent powers or through statutes and rules of procedure intended for those purposes. The determination of whether attorney's fees are warranted under § 285 should be a determination of whether in light of the totality of the circumstances the case *as a whole* is exceptional. In this regard, § 285 is of a kind with other statutes that allow district courts to award attorney's fees to the prevailing party. *See, e.g.*, 15 U.S.C. § 1117(a) (Lanham Act); 17 U.S.C. § 505 (Copyright Act). The relevant

considerations are to be viewed together and at the conclusion of the case. The procedure for awarding attorney's fees under § 285 is governed by Rule 54(d) of the Federal Rules of Civil Procedure.

Sixth, the relevant considerations for a determination of whether a case is "exceptional" may include the conduct of the winning party—for example, whether the winning party advanced arguments in bad faith or committed litigation misconduct. As the Court emphasized in *Octane*, the decision to award attorney's fees is one of "'equitable discretion.'" 134 S. Ct. at 1756 (quoting *Fogerty*, 510 U.S. at 534); *see also id.* at 1754 (describing the early cases under § 285 and its predecessor as taking a "holistic, equitable approach"); *Park-In-Theatres*, 190 F.2d at 142 ("The exercise of discretion in favor of such an allowance should be bottomed upon a finding of unfairness or bad faith in the conduct of the losing party, *or some other equitable consideration of similar force . . . .*" (emphasis added)). The equitable force of bad conduct of the losing party may be diminished depending on the conduct of the winning party.

Finally, the standard of proof is a preponderance of the evidence, rather than clear and convincing evidence as before. *Octane*, 134 S. Ct. at 1758.

## II

Here, Intel moves for an award of attorney's fees based on both the substantive lack of strength of Stragent's litigating positions and Stragent's conduct during litigation. Intel's motion is fairly characterized as taking the "kitchen sink" approach that this court concluded is unwarranted. Intel's arguments are in any event insufficient. In light of the standards discussed in the Supreme Court's decision in *Octane*, the court finds that this case is not "exceptional" and that Intel's motion for an award of attorney's fees should be denied.

Intel's motion is primarily based on the fact that Stragent made losing arguments. As explained above, that is not a ground for finding a case exceptional. Every case will have a loser. To show that the case is "exceptional" under § 285, Intel must show that it "stands out from others." *Octane*, 134 S. Ct. at 1756. Intel's arguments concerning aspects of Stragent's damages theory, Stragent's contention that nominal patent owner TAG Foundation had standing as a co-plaintiff, Stragent's proposed construction of claim 16 of the '072 patent, and Stragent's position that no supplemental claim construction was necessary are unavailing. These were losing arguments, but they were not frivolous.

Putting to one side Intel's "losing arguments" theory, Intel's main argument is that Stragent's theory of infringement was "implausible" and that "no reasonable litigant could argue" that the accused devices satisfied the claim limitations. Am. Mot. for Atty's Fees 5. The claim limitation at issue requires a "demultiplexer" that receives instructions "indicating which of [two CRC circuits] is to perform the CRC operation thereby providing an indicated circuit." '072 patent col. 7 ll. 6, 7–9. According to Intel, the plain language of the claim—"indicating which of the first and second circuits *is* to perform the CRC operation thereby providing *an* indicated circuit," *id.* (emphasis added),—means only one of the circuits is selected for each mode of operation. But Stragent's infringement theory was that Intel's accused devices satisfied the limitation by using one CRC circuit in one mode of operation and both CRC circuits in the other. Intel argues that "[s]imply put, two is not one, and no reasonable litigant could argue otherwise." Am. Mot. for Atty's Fees 5.

Stragent's argument was certainly a weak one, but despite the alleged implausibility of Stragent's position, Intel never sought summary judgment of non-infringement on the basis of the limitation at issue. This suggests that Intel did not always view Stragent's infringement

9

position as frivolous. There is little injustice in forcing Intel to bear its own attorney's fees for defending a claim it did not challenge on summary judgment. Disposing of a frivolous claim on summary judgment would avoid a trial and have the effect of saving both parties a substantial portion of their litigation costs.

Intel also contends that Stragent's position on the validity of the asserted claims was frivolous. In hindsight, Stragent's validity argument was certainly not a winning position, but the disputes between the parties over invalidity and related claim construction questions were real and substantial. In fact, Stragent prevailed in the majority of disputed claim constructions. It simply lost the jury verdict. As explained above, the mere fact that a party makes losing arguments is not relevant to the awarding of attorney's fees.

Finally, Intel argues that Stragent delayed in disclosing certain positions and in abandoning certain other claims and positions, and that this constituted litigation misconduct. It did not. Nor does this court see litigation misconduct in Intel's allegation that Stragent filed infringement suits against Intel customers in an effort to force a settlement of this case. Nor, contrary to Intel's position, did Stragent engage in bad faith discovery. The court notes that Intel never sought discovery sanctions against Stragent or even a court ruling limiting the scope of discovery.

As this court remarked more than once, counsel for both sides were cooperative in reaching stipulations and minimizing disputes over collateral issues throughout the case. This not only saved the court's time, but surely lowered the parties' costs as well. Such professionalism is to be commended, and it weighs against a finding that an award of attorney's fees is warranted.

10

## CONCLUSION

For the reasons discussed above, this case is not one that "stands out from others with respect to the substantive strength of [Stragent's] litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane*, 134 S. Ct. at 1756. It is not an "exceptional case[]" warranting an award of attorney's fees under § 285. Intel's motion for attorney's fees is denied.

Signed and ordered August 6, 2014.

_____
Hon. Timothy B. Dyk
United States Circuit Judge[*]

---

[*] Of the United States Court of Appeals for the Federal Circuit, sitting by designation.